**Opinion issued January 23, 2014.**



**In The**

# Court of Appeals

**For The**

# First District of Texas

———————————

**NO. 01-12-00763-CR**

———————————

**HAROLD WAYNE CHERRY, Appellant**

**V.**

**THE STATE OF TEXAS, Appellee**

**On Appeal from the 23rd District Court**
**Brazoria County, Texas**
**Trial Court Case No. 65798**

**MEMORANDUM OPINION**

A jury convicted Harold Wayne Cherry of aggravated assault and assessed punishment at eight years' imprisonment.[1] In his sole issue on appeal, Cherry contends that the trial court erred by charging the jury on the law of provocation,

---

[1]     TEX. PENAL CODE ANN. § 22.02(A)(1) (West 2011).

despite his timely objection that there was insufficient evidence to raise the issue. We affirm.

## Background

Late one summer evening, Harold Cherry went to Deborah Schall's trailer home to pick up a paycheck that had been delivered there. Cherry and Schall had been in a relationship for about eight years. For a portion of that time, Schall, her nineteen-year-old son, Jeffrey Couchman, and Cherry lived together in Schall's trailer home.

That night, Cherry and Schall got into a heated argument when Schall refused to give Cherry his paycheck. Couchman testified that when Cherry would not leave the house, he intervened and asked Cherry to leave. Cherry responded by starting a fistfight with Couchman. During the fight, the two broke the front porch railing and tumbled to the ground. While rolling on the ground, Cherry bit off the tip of Couchman's right index finger. Cherry then left in his truck.

Law enforcement officials, including Alvin Police Department Officer C. Fullen, responded to reports of a domestic disturbance at Schall's home. While Couchman waited for emergency medical assistance, he gave an oral statement to Officer Fullen blaming Cherry for starting the fight. Couchman reported that Cherry was drunk when he came into the house and demanded Schall to give him his check. Cherry beat on the door and broke a kitchen window. Despite Schall's

2

repeated requests, Cherry refused to leave. Couchman also reported that Cherry "man-handled" his mother and shut a door on her arm. Cherry ignored Couchman's requests for him to leave, shoved Couchman onto the porch, and attempted to hit him. Cherry wrestled Couchman to the ground, bit his left middle finger, and then bit off the tip of his right index finger. Officer Fullen observed bruises on Schall's arm consistent with Couchman's version of the events.

Almost a year later, Couchman gave a second statement. He recanted his first version of the fight and instead took responsibility for starting the fight. Couchman reported that he was holding Cherry to the ground when Cherry bit his finger. Couchman also said that Cherry was not drunk when he arrived at the house.

At trial, only Couchman and two law enforcement officers testified. Couchman testified that he feared "get[ting] in trouble" for starting the fight with Cherry, so he lied in his statement to Officer Fullen. He testified that he provoked Cherry and hit him 15 to 20 times before Cherry was able to escape. Couchman also testified that he had visited Cherry in jail and did not want Cherry to be prosecuted.

Over Cherry's objection, the jury charge regarding self-defense included a provocation instruction. The charge stated:

> In this case, if you find and believe from the evidence beyond a reasonable doubt that the defendant, HAROLD WAYNE CHERRY,

3

immediately before the difficulty, then and there did some act, or used some language, or did both, as the case may be, with intent on his, the defendant's part, to produce the occasion for the injury of Jeffery Couchman, Jr., and to bring on the difficulty with Jeffery Couchman, Jr., and that such words and conduct on the defendant's part, if there were such, were reasonably calculated to, and did provoke the difficulty, and that on such account Jeffery Couchman, Jr., attacked defendant, or reasonably appeared to defendant to so attack him or to be attempting to so attack him, and that the defendant then injured the said Jeffrey Couchman, Jr., by the use of force, to wit, by biting Jeffery Couchman, Jr.'s, finger in pursuance of his original design, if you find there was such a design, then you will find the defendant guilty of Aggravated Assault.

On the other hand, if you find from the evidence that the acts done or language used by the defendant, if any, were not, under the circumstances, reasonably calculated or intended to provoke a difficulty or an attack by Jeffery Couchman, Jr., upon defendant, or if you have a reasonable doubt thereof, then, in such event, defendant's right of self-defense would in no way be abridged, impaired, or lessened, and if you find, or if you have a reasonable doubt thereof you will decide the issue of self-defense in accordance with the law on that subject given in other portions of this charge, wholly disregarding and without reference to the law on the subject of provoking the difficulty.

A jury convicted Cherry of aggravated assault and, because of three prior convictions, assessed punishment at eight years' imprisonment. Cherry timely appealed.

### Provocation Instruction

Cherry contends that the trial court erred by including a provocation instruction because there was insufficient evidence that he provoked the fight with Couchman. We disagree. We conclude that there was sufficient evidence for a jury

4

to find that Cherry provoked Couchman. The trial court did not err by instructing the jury on provocation.

## A.    Standard of review

We follow a two-step process when reviewing jury charges. *Ngo v. State*, 175 S.W.3d 738, 744 (Tex. Crim. App. 2005); *Cornett v. State*, 405 S.W.3d 752, 757 (Tex. App.—Houston [1st Dist.] 2013, pet ref'd.). First, we determine whether there is an error in the charge. *Cornett*, 405 S.W.3d at 757. Second, if there is an error, we determine whether the error caused harm requiring reversal of the conviction. *Id*. We first address whether there was any error in the charge.

## B.    The trial court did not err by including a provocation instruction

The Texas Penal Code states that a person may justifiably use force against another when he reasonably believes that the force is immediately necessary to protect himself from the other person's attempted or actual use of unlawful force.[2] A defendant, however, may forfeit his right to self-defense if he provokes the attack. *Smith v. State*, 965 S.W.2d 509, 512 (Tex. Crim. App. 1998). When a criminal defendant provokes the attack, he may not rely on the excuse of self-defense unless (1) the defendant "abandons the encounter or clearly communicates to the other [person] his intent to do so reasonably believing he cannot safely abandon the encounter and (2) the other [person] nevertheless continues or

---

[2]    TEX. PENAL CODE ANN. §§ 9.02, 9.31(a) (West 2011).

5

attempts to use unlawful force against [him] . . . ." TEX. PENAL CODE ANN. 9.31(b)(4) (West 2013).

An instruction on the law of provocation or "provoking-the-difficulty" limits a defendant's right to claim self-defense. *Smith*, 965 S.W.2d at 512. When reviewing a challenge to a jury charge that includes a provocation instruction, the appellate court considers whether there was "sufficient evidence from which a rational jury could have found provocation beyond a reasonable doubt, viewing the evidence in the light most favorable to giving the instruction." *Id*. at 514–15; *see also Reeves v. State*, No. 01-10-00395-CR, 2012 WL 5544770, at *3 (Tex. App.— Houston [1st Dist.] Nov. 15, 2012) (mem. op., not designated for publication), *aff'd*, No. PD-1711-12, 2013 WL 5221142, at *1 (Tex. Crim. App. 2013). There is sufficient evidence of provocation when (1) the defendant did some act or used some words that provoked the attack on him, (2) the act or words were reasonably calculated to provoke the attack, and (3) the act was done or the words were used for the purpose and with the intent that the defendant would have a pretext for inflicting harm upon the other. *Smith*, 965 S.W.2d at 513. The three elements of provocation are questions of fact and may be proven by circumstantial evidence. *Id*. at 513, 516. Cherry argues that the evidence was insufficient to prove all of the elements.

We turn now to consider the first element—whether Cherry provoked Couchman's attack.

### 1. Evidence of Cherry's actions and words was sufficient for a jury to find that he provoked Couchman's attack

The first element of provocation requires that the defendant do some act or use some words to provoke an attack. *Smith*, 965 S.W.2d at 514. While the acts or words causing the attack are normally directed at the victim, they may be directed at a third party. *Id.* at 514. Cherry concedes that "a man arguing with another man's mother" could have provoked a son to respond as Couchman did. Cherry, however, asserts that Schall initiated the argument by not returning his check and he responded to her refusal to return his property. According to Cherry, he was not the first aggressor, and, as a result, there was insufficient evidence that he provoked Couchman's attack.

We review the record evidence in the light most favorable to the instruction, deferring to the "jury's credibility and weight determinations because the jury is the sole judge of the witnesses' credibility and the weight to be given their testimony." *Winfrey v. State*, 393 S.W.3d 763, 768 (Tex. Crim. App. 2013); *see also Juarez v. State*, 409 S.W.3d 156, 161 (Tex. App.—Houston [1st Dist.] 2013, pet ref'd.). The State does not have to prove the exact words or acts that provoked the attack; rather, "the jury must merely be able to find that there was *some* provoking act or words." *Smith*, 965 S.W.2d at 515. Couchman gave two different

7

accounts of the fight with Cherry. We conclude that a reasonable jury could have found Couchman's first statement more credible and that it provided sufficient evidence that Cherry provoked Couchman.

Shortly after the fight, Couchman gave a statement to Officer Fullen. Couchman said that Cherry drunkenly man-handled Schall and then shut a door on her arm. Couchman told the officer that he also asked Cherry to leave. Cherry refused and shoved Couchman, initiating a physical fight that ended when Cherry bit off the tip of Couchman's finger. Based on Couchman's first statement to Officer Fullen, there is some evidence that Cherry provoked the fight with Couchman.

Despite this evidence, Cherry relies on *Trevino v. State*, 204 S.W. 996, 999 (Tex. Crim. App. 1918) to support his contention that he did not provoke Couchman. The *Trevino* court held that there was no evidence of provocation when there was uncontested evidence that the other party initiated the fight. *Id*. at 998–99. The Court of Criminal Appeals explained,

> [W]here the accused is not in the wrong originally, but during the progress of the difficulty he uses *such language*, it would not be considered as provoking a difficulty. Provoking a difficulty, as before stated, is based upon the proposition that the accused does some act or performs some conduct, or uses such words as would occasion or provoke a difficulty, and with that purpose in view.

*Id*. at 999. The facts in *Trevino* are distinguishable from this case. There was no evidence that the *Trevino* defendant initiated the difficulty. *Id*. at 998. Rather, the

8

dancehall fight began when another man put his hand on or struck Trevino's shoulder for "interfering with the dancing." 204 S.W. 997. The two men exited the dance hall and began to fight. *Id*. During the fight, Trevino shot and killed the other man. *Id*. The court held that while Trevino's words were offensive—he called the other a "son of a harlot"—he did not provoke the fight because the argument began when the other man put his hand on Trevino's shoulder. *Id*.

Unlike *Trevino*, there is evidence that Cherry provoked the difficulty with Couchman. Cherry was drunk when he arrived at Schall's house and refused to leave, despite Schall's multiple requests to do so. Cherry "man-handled" Schall in front of her son. Furthermore, in his first statement, Couchman told police that Cherry instigated the fight by pushing Couchman, swinging at him, and wrestling him to the ground.

Because there is evidence that Cherry initiated the difficulty with Schall and with Couchman, we hold that a rational jury could find Cherry provoked Couchman.

### 2. Cherry's actions and words were reasonably calculated to provoke Couchman

The second element of provocation asks whether Cherry's acts or words were reasonably calculated to provoke the attack. *Smith*, 965 S.W.2d at 513. To provoke an attack, the act or words must have a "reasonable tendency to cause an attack." *Id*.; *see also Morrison v. State*, 256 S.W.2d 410, 411 (Tex. Crim. App.

9

1953) (". . . words alone may provoke a difficulty, they must clearly be designed to do so."). Cherry argues that his actions and words were not reasonably calculated to provoke Couchman because his initial argument was with Schall and there is no evidence that he knew Couchman was home when that argument began. We conclude that Cherry's actions were reasonably calculated to provoke the fight with Couchman.

A jury may rely on circumstantial evidence to find beyond a reasonable doubt that defendant's actions and words were reasonably capable of or had a reasonable tendency to cause an attack. *Smith*, 965 S.W.2d at 517. A jury may also find provocation based on the words or acts "in conjunction with the relations of the parties. . . ." *Id*. Word or acts directed at a third party may also provoke a difficulty. *Bennett v. State*, 726 S.W.2d 32, 36 n.3 (Tex. Crim. App. 1986).

According to Couchman's original statement, Cherry "man-handled" Schall, shut the door on her arm, and refused to leave the house when she asked him to go. As Cherry concedes in his brief, it is reasonable to conclude that such actions would provoke a son to defend his mother. Further, according to Couchman's first statement, after he asked Cherry to leave, Cherry shoved him onto the porch, initiating a fistfight during which Cherry bit off his finger.

We hold that the evidence of Cherry's words and actions toward Schall, as well as his acts of physical violence toward Couchman support the jury's

10

conclusion that Cherry's acts and words were reasonably calculated to provoke Couchman.

### 3. Cherry intended to provoke Couchman

We turn now to the third element of provocation: whether there was evidence that Cherry intended his words or acts to have the purpose and intent of providing a pretext for assaulting Couchman. *Smith*, 965 S.W.2d at 518. The record must show that Cherry intended his acts to have a provocative effect "as a part of a larger plan of doing the victim harm." *Smith*, 965 S.W.2d at 518. We conclude it does.

Even if a defendant acts wrongly and provokes an attack by another, he will not lose his right to self-defense if he did "no[t] inten[d] that the act would have such an effect as a part of a larger plan" of harming the victim. *Id*. Whether a defendant had the requisite intent is a question of fact for the jury that can be determined based on the totality of the circumstances. *Id*. (citing *Hernandez v. State*, 819 S.W.2d 806, 810 (Tex. Crim. App. 1991). Intent can be identified by reviewing the defendant's actions during or after the alleged provocation and his prior acts. *Smith*, 965 S.W.2d at 518; *see Matthews v. State*, 708 S.W.2d 835, 838 (Tex. Crim. App. 1986) (stabbing victim 24 times established intent). Because intent is a fact issue, we generally defer to the jury's determination that there is evidence that the defendant acted with a "certain craftiness and design" in injuring

11

his victim. *Smith*, 965 S.W.2d at 518 (quoting *Gray v. State*, 114 S.W. 635, 645 (Tex. Crim. App. 1908)). A guilty verdict is "an implicit finding rejecting the defendant's self-defense theory." *Saxton v. State*, 804 S.W.2d 910, 914 (Tex. Crim. App. 1991).

In a few "exceptional and extraordinary situations," the Court of Criminal Appeals has held there was insufficient evidence to support a jury's finding of intent. *Smith*, 965 S.W.2d at 519. For example, in *Bennett*, there was insufficient evidence of provocation when "it was inconceivable that the defendant orchestrated [a] set of events as a ploy to kill a man he did not even know." *Id.* at 518 (citing *Bennett*, 726 S.W. at 36). The Court of Criminal Appeals has also held evidence was insufficient to include a provocation instruction when the defendant did not arrange or intend to bring on an attack. *Wampler v. State*, 234 S.W.2d 1009 (Tex. Crim. App. 1950). In *Wampler*, the defendant was a night watchman conducting a routine inspection of a door when the victim occupant, fearing an invader, opened the door and shot at the watchman. *Id.* at 1009–10. The watchman returned fire, killing the occupant. *Id.* The Court reasoned that there was insufficient evidence that the defendant meant to provoke the occupant by inspecting the door. *Id.* The record in this case does not reflect such extraordinary circumstances.

Cherry argues he did not intend to provoke Couchman: he did not know Couchman was home; there is no evidence that he had a strained relationship with Couchman; and there is no evidence that Cherry had committed domestic violence against Schall or Couchman in the past. We disagree that these matters conclusively show Cherry did not act with a "certain craftiness and design" when injuring his victim.

According to Couchman's first statement, Cherry was drunk, man-handled Schall, and hit her arm with the door. Couchman also reported that despite repeated requests to leave, Cherry remained at the trailer. When Couchman asked Cherry to leave, he did not leave and instead pushed Couchman. Cherry's refusal to leave and pushing Couchman support the jury's conclusion that Cherry intended to harm Couchman.

We hold that the evidence was sufficient that a rational jury could find beyond a reasonable doubt that Cherry's actions and words provoked Couchman, were reasonably calculated to provoke Couchman, and were done with the intent to harm Couchman. The trial court, therefore, did not err by submitting the provocation instruction to the jury.

We overrule Cherry's sole issue.

## Conclusion

We affirm.

                                   _____

                                   Harvey Brown
                                   Justice

Panel consists of Justices Jennings, Sharp, and Brown.

Do Not Publish. TEX. R. APP. P. 47.2(b).